ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of -- | ) |
| | ) |
| Advanced Technologies Group, Inc. | ) ASBCA Nos. 59986, 61092 |
| | ) |
| Under Contract Nos. W911QX-06-C-0068 | ) |
| W911W6-08-C-0043 | ) |
| N68335-09-C-0214 | ) |
| N68335-09-C-0313 | ) |
| N68335-11-C-0154 | ) |

APPEARANCE FOR THE APPELLANT:　　　　Mr. John Justak
　　　　　　　　　　　　　　　　　　　　　　President

APPEARANCES FOR THE GOVERNMENT:　　Arthur M. Taylor, Esq.
　　　　　　　　　　　　　　　　　　　　　　DCMA Chief Trial Attorney
　　　　　　　　　　　　　　　　　　　　　Peter M. Casey, Esq.
　　　　　　　　　　　　　　　　　　　　　　Trial Attorney
　　　　　　　　　　　　　　　　　　　　　　Defense Contract Management Agency
　　　　　　　　　　　　　　　　　　　　　　Boston, MA

OPINION BY ADMINISTRATIVE JUDGE HARTMAN ON
APPELLANT'S MOTION FOR SUMMARY JUDGMENT AND THE
GOVERNMENT'S CROSS-MOTION FOR SUMMARY JUDGMENT

　　　　The Defense Contract Management Agency (DCMA) issued contracting officer
(CO) final decisions asserting claims against appellant, Advanced Technologies Group,
Inc. (ATGI), based upon ATGI including expressly unallowable costs (e.g., marketing
and patent legal expenses) in its Fiscal Year (FY) 2007 and FY 2009 Indirect Cost
Proposal (ICP), plus penalties related to its alleged inclusion of such expenses in the
ICPs, ASBCA Nos. 59986 and 61092, respectively.  ATGI timely appealed both final
decisions to this Board and filed motions for summary judgment with respect to both
appeals contending DCMA's claims are barred by the Contract Disputes Act (CDA)
six-year statute of limitations, 41 U.S.C. § 7103(a)(4)(A), because they were asserted
more than six-years after the date that ATGI submitted each ICP to the Defense
Contract Audit Agency (DCAA).  DCMA filed a cross-motion for summary judgment
with respect to each appeal asserting its claims are timely because it asserted them
within six-years of the date it knew or should have known of its claim against ATGI
and it is entitled to judgment as a matter of law due to ATGI's costs claimed being
expressly unallowable.

## STATEMENT OF FACTS FOR PURPOSES OF THE MOTIONS

In 1998, ATGI (a two-employee company then known as Justak R&D, Inc.) received its first cost-plus Small Business Innovation Research (SBIR) contract from the National Aeronautics and Space Administration (NASA).  At or near the time of this award, ATGI met with DCAA to establish an adequate accounting system and method of developing indirect rates.  DCAA provided ATGI with pamphlet No. 7641.90, "Information for Contractors," which it prepared to assist contractors in understanding applicable requirements and to help ease the contract audit process.  Chapter 6 of the pamphlet, titled "Incurred Cost Proposals," ¶ 6-201, states the contractor is required to submit an adequate final incurred cost proposal within six months after the end of its fiscal year.  The pamphlet includes an illustration of a Model Incurred Cost Proposal.  (App. resp. to gov't opp'n at 10-11)

ATGI consulted with DCAA regarding its accounting practices, direct and indirect rates and the methods to establish those rates from the first cost-plus contract it performed (app. resp. to gov't opp'n at 7).  ATGI used the incurred costs electronically (ICE) Excel spreadsheet model furnished by DCAA to submit its incurred cost proposals.  DCAA approves the incurred cost proposal submission as adequate or not adequate after it receives the submission. *Id*. at 8.  If inadequate, DCAA is required to notify ATGI, as DCAA did for ATGI's FY 2006 ICP.  In that year, ATGI provided three revisions to its ICP prior to DCAA deeming the ICP adequate.  (*Id*. at 8-9)

The Rule 4 file for these appeals indicates that ATGI was the recipient of four cost-plus-fixed-fee contracts during the periods relevant to these appeals (No. W911QX-06-C0068 dated February 15, 2006, No. W911W6-08-C-0043 dated September 2008, No. N68335-09-C-0214 dated May 13, 2009, and No. N68335-09-C-0313 dated June 25, 2009) (R4, tabs 1-4).  All four were SBIR contracts incorporating Federal Acquisition Regulation (FAR) 52.227-11, PATENT RIGHTS – OWNERSHIP BY THE CONTRACTOR clause, specified for use in experimental, developmental, and research work contracts, FAR 27.303(b).  As we discussed in *CANVS Corporation*, ASBCA Nos. 57784, 57987, 18-1 BCA ¶ 37,156 at 180,865, during 1982, Congress established a government-wide Small Business Innovation Research Program to assist small businesses in obtaining and performing innovative research and development (R&D) work. *See* Small Business Innovation Development Act of 1982, Pub. L. No. 97-219, 97th Cong., sec. 4, § 9, 96 Stat. 218 (codified as amended at 15 U.S.C. § 638).  The statutory purpose, as addressed in the SBA SBIR Policy Directive, is to strengthen the role of innovative small business concerns in federally-funded research development.  Congress desired that small businesses be used to meet government R&D needs and increase the commercialization of innovations derived from federal funds for R&D, thereby increasing economic growth, competition, and productivity. *DoD Small Business Innovation Research Desk Reference for Contracting and Payment* at 54, *available at* https://fliphtml5.com/qaad/qnhx/basic/51-100.

2

Since 1999, ATGI has undergone DCAA audits every year. Some annual audits require complete accounting system direct and indirect cost review. DCAA advised full, detailed reviews would occur only every three to five years, with less-detailed reviews occurring the other years. (App. resp. to gov't opp'n at 11)

DCAA performed a complete accounting system audit of ATGI's indirect rates for FY 2006 (*id*. at 7-8). On February 27, 2009, David L. Van Dingenen, CPA, DCAA Tampa Bay Branch Office, requested an "entrance conference" to begin the audit of ATGI FY 2006 Incurred Cost Submission and asked ATGI to send him data for 13 categories of items, including: a copy of the last public voucher submitted for costs billed through December 31, 2006; an electronic copy of the job cost ledger in support of the costs billed through December 31, 2006 for each flexibly priced government contract; and a detailed electronic listing of all transactions (journal entries) in support of the claimed amount for "Legal Fees," "G&A Salary," "Travel," and "Education." (*Id*. at 12-13) In May 2009, ATGI and DCAA executed a rate agreement for FY 2006 based on the submission DCAA received and subsequent site visits (*id*. at 14). Legal and patent costs for FY 2006 were deemed acceptable as part of the G&A indirect rate (i*d*.).

### FY 2007 – ASBCA No. 59986

ATGI's 2007 ICP, Schedule B. General and Administrative (G&A) Expenses (Final Indirect Cost Pool) included a specific sum for "Marketing" expenses, "Legal Fees," and "Travel" expenses. The ICP contained no further detail regarding those line items. (Bryan FY 2007 aff. ¶¶ 5-6; Bryan FY 2007 aff., ex 1, Schedule B – General & Administrative (G&A) Expenses Fiscal Year Ended 12/31/2007 at 261) DCAA received the 2007 ICP on May 13, 2008 (Bryan FY 2007 aff. ¶ 4). In submitting its FY 2007 ICP, ATGI did not provide DCAA any financial, accounting or other records or documents with additional information about the marketing, legal fees or travel expenses included on the G&A Schedule (Bryan FY 2007 aff. ¶ 7).

On May 2, 2011, DCAA requested ATGI's "Trial Balance," an accounting report that itemizes credit and debit balances for each account in an entity's general ledger. ATGI supplied that data on May 10, 2011, which indicated it incurred patent legal costs. Until DCAA received this data, it possessed no information that the G&A Schedule's line item for "Legal Fees" in the FY 2007 ICP included patent legal cost. (Bryan FY 2007 aff. ¶¶ 8-11; Bryan FY 2007 aff., ex. 2 at 313)

In response to DCAA requests after May 10, 2011, ATGI supplied some supporting documentation relating to its 2007 legal fees, marketing costs, and travel expenses claimed as allowable costs. For example, on June 21, 2011, during an on-site

visit, ATGI supplied DCAA with a detailed listing of its claimed patent legal costs. DCAA subsequently described those costs as follows:

> Various transaction . . . were for legal fees paid to the firm of Gray, Robinson to obtain or maintain domestic and foreign patents. The contractor provided attorney invoices for each charge. The contractor considers ALL patent costs to be allowable as ATG[I] has SBIR (small business contracts) under which they assert ownership of the patent is retained by the contractor. ATG[I] stated, "As the contractor may well use the technology in multiple contracts, the patent costs need to be allocated as an indirect cost."

(Bryan FY 2007 aff., ex. 5A at 327, ex. 5B)

DCAA informed ATGI its travel costs must be supported in accordance with FAR 31.205-46(7), e.g., identification of traveler and trip purpose (Bryan FY 2007 aff. ¶¶ 16-17; Bryan FY 2007 aff., ex. 3 at 317, ex. 4 at 319-20, ex. 6A at 332, ex. 7A at 345). DCAA made numerous requests to ATGI to provide documents to support the travel expense it claimed as allowable indirect costs in its FY 2007 ICP, but ATGI did not provide such support. On or about August 12, 2011, DCAA advised ATGI that, as a result of its failure to produce supporting documents, DCCA was questioning the total amount of travel expenses pursuant to FAR 31.205-46(a)(7), which states "Costs shall be allowable only if the following information is documented – Date and place (city, town or other similar designation) of the expenses; purpose of the trip; and [n]ame of person on trip and that person's title or relationship to the contractor." According to DCAA, Denise Miller of ATGI thereafter "conceded" that ATGI did not intend to support its claimed travel costs. (Bryan FY 2007 aff. ¶¶ 16-17, 20-21, 23; Bryan FY 2007 aff., ex. 4 at 320, ex. 6A at 332, 354, ex. 8 at 354, 356)

During late August 2011, DCAA supervisory management determined that additional work was needed to complete the FY 2007 ICP audit. Due to DCAA workload priorities, DCAA placed the ATGI audit "on hold." Over a year later, in September 2012, DCAA transferred the audit to Supervisory Auditor Judy J. Bryan and her team for completion. (Bryan FY 2007 aff. ¶¶ 24-26; Bryan FY 2007 aff., ex. 8 at 356)

On August 21, 2013, DCAA senior auditor Arnold Schloss held an audit exit conference for the FY 2007 ICP audit with John Justak, ATGI President and CEO, Lucy Fribourg, CPA, and Louis Surette, ATGI Chief Strategy Officer (Bryan FY 2007 aff., ex. 9 at 366-67). During the conference, auditor Schloss advised ATGI of the sum of costs identified as questionable and that more than half that sum related to its

4

claimed travel expenses (Bryan FY 2007 aff. ¶ 28; Bryan FY 2007 aff., ex. 9 at 367). On September 20, 2013, Supervisory Auditor Bryan transmitted to ATGI a draft copy of the results of DCAA's audit of ATGI's FY 2007 ICP and requested a written response by September 25, 2013 (Bryan FY 2007 aff. ¶¶ 29-30; Bryan FY 2007 aff., ex. 10).

On or about September 25, 2013, DCAA received ATGI's written response to the draft audit findings, which asserted in part that: it first learned in the exit conference it had not produced support for its disputed travel expenses; DCAA had addressed its travel requests to an administrative assistant no longer employed by ATGI; and ATGI was appending copies of expense reports for 2007 relating to $38,116.77 in travel expenses. (Bryan FY 2007 aff. ¶¶ 31-32; Bryan FY 2007 aff., ex. 11 at 385)

On October 11, 2013, DCAA auditors Schloss and Bryan met with Mr. Justak at ATGI's facility to discuss ATGI's response to the draft audit results. The next day, ATGI sent DCAA additional invoices in support of travel costs it claimed as allowable in its FY 2007 ICP. DCAA reviewed and evaluated the additional data, and amended its draft findings to reduce the amount of costs it questioned as unallowable. (Bryan FY 2007 aff. ¶¶ 33-35; Bryan FY 2007 aff., ex. 6A at 332, ex. 7A at 345, ex. 9 at 365)

After conducting a second exit conference for the audit on August 7, 2014, DCAA "finalized" its FY 2007 ICP audit and report thereon dated August 29, 2014, which it issued to DCMA Administrative Contracting Officer (ACO) Ron Souto (Bryan FY 2007 aff. ¶¶ 36-37; Bryan FY 2007 aff., ex. 12 at 388). In the final audit report, DCAA determined at pages 10 and 15 that ATGI claimed expressly unallowable costs for certain indirect general and administrative expenses (marketing, legal and travel), and the costs were subject to a level one penalty in accordance with FAR Part 31.2 and FAR 42.709 (Souto aff. ¶¶ 8-10). The final report reduced by more than half the costs DCAA had questioned as expressly unallowable in its draft findings (Bryan FY 2007 aff. ¶ 38; Bryan FY 2007 aff., ex. 10 at 377, ex. 12 at 405). The DCAA reductions were for the most part based on information ATGI provided DCAA during or after September 2013, i.e., more than five years after ATGI had submitted its 2007 ICP (Bryan FY 2007 aff. ¶¶ 38-39; Bryan FY 2007 aff., ex. 12).

After August 29, 2014, ACO Souto reviewed DCAA's FY 2007 Audit Report and other information, including information ATGI first provided to DCAA in 2013, and made an independent determination to allow $7,004 in marketing expense, which DCAA had questioned, thereby reducing the amount of costs subject to penalty under FAR 42.709-1(a)(1). Otherwise, he adopted DCAA's determination of expressly unallowable cost and issued an April 13, 2015 final decision asserting a claim against ATGI with respect to those costs and related penalties. (Souto aff. ¶¶ 8-10) The final decision identified as expressly unallowable certain marketing costs, travel expenses,

and legal costs (relating to patents). With respect to the disputed costs, 80.78% were allocable to government contracts. ATGI timely appealed to this Board the April 13, 2015 final decision asserting a claim for inclusion of "expressly unallowable" costs in its FY 2007 indirect cost rate proposal, plus associated penalties. (Gov't opp'n and cross mot. at 24)

<u>FY 2009 – ASBCA No. 61092</u>

ATGI furnished its FY 2009 ICP to DCAA on or about June 15, 2010 (App. mot. ¶ 2; gov't opp'n and cross mot. at 8; Bryan FY 2009 aff. ¶ 4; Bryan FY 2009 aff., ex. 1; R4, tab 6). In November 2013, DCAA classified ATGI's FY 2009 ICP as "low risk" and determined not to conduct audit procedures thereon in accordance with Generally Accepted Government Accounting Standards and Defense Contract Audit Manual (2013) § 6-104.1 (Bryan FY 2009 aff. ¶ 5; *see* Bryan FY 2009 aff., ex.3). During December 2015, after ATGI filed its appeal with this Board regarding its 2007 FY ICP, DCAA reclassified ATGI's 2009 ICP as "high risk" due to concerns relating to unallowable marketing and patent costs (Bryan FY 2009 aff. ¶ 6; Bryan FY 2009 aff., ex. 2). DCAA, however, still considered the 2009 ICP to be an adequate submission (Bryan FY 2009 aff., ex. 2).

The same month DCAA reclassified ATGI's 2009 ICP as "high risk," DCAA decided to "disengage" from an audit of the FY 2009 ICP as a result of its inability to complete an audit by the end of the month, i.e. December 31, 2015 (Bryan FY 2009 aff. ¶ 7). On December 22, 2015, DCAA sent an email to DCMA ACO Souto stating that it was "disengaging" from the ATGI audit "because we are unable to complete the audit due to time constraints" (Bryan FY 2009 aff. ¶ 8; Bryan FY 2009 aff., ex. 2; Fernandez aff. ¶ 3; Fernandez aff., ex. 1). The same day, DCCA sent an email to ATGI requesting that ATGI send accounting records for legal and marketing expenses for FY 2009. The next day, on December 23, 2015, DCAA's Branch Manager sent a memorandum advising DCMA that DCAA was withdrawing from auditing ATGI's FY 2009 ICP (Bryan FY 2009 aff. ¶ 9; Bryan FY 2009 aff., ex. 3, ex. 4 at 846; Fernandez aff. ¶ 3; Fernandez aff., ex. 1). Supervisory Auditor Bryan believed DCMA wanted DCAA to complete an audit of the FY 2009 ICP by December 31, 2015, in order to give DCMA opportunity to meet its own internal requirements for finalizing establishment of FY 2009 indirect cost rates (to which she was not privy) (Bryan FY 2009 aff. ¶ 13). According to Supervisory Auditor Bryan, at the time of DCAA's withdrawal from audit of the FY 2009 ICP, DCAA had not obtained documentation or other information to assess the allowability or non-allowability of costs claimed by ATGI in its FY 2009 ICP (Bryan FY 2009 aff. ¶¶ 11-12; Bryan FY 2009 aff., ex. 5 at 1).

ATGI responded to DCAA's request to send accounting records for legal and marketing expenses for FY 2009 on February 29, 2016, by sending Auditor Bryan an email attaching separate Excel spreadsheets for ATGI legal and marketing expenses

(Bryan FY 2009 aff. ¶ 10; Bryan FY 2009 aff., ex. 4).  On April 12, 2016, DCAA sent DCMA a copy of the FY 2009 ICP by email.  DCAA additionally sent DCMA a copy of ATGI's February 29, 2016 email and attachments sent to DCAA in response to Supervisory Auditor Bryan's December 2015 information request.  (Fernandez aff. ¶¶ 4-5; Fernandez aff., exs. 2-3)  Nine days later, on April 21, 2016, ACO Souto sent ATGI an email asking it to provide DCMA with supporting documentation for ATGI's Excel spreadsheets (ledger accounts) for FY 2009 legal and marketing costs in order to determine the allowability of such costs (Fernandez aff. ¶ 6; Fernandez aff., ex. 4).

The following day, on April 22, 2016, DCAA's Supervisory Auditor, Judy Bryan, sent ATGI an email stating:

> Thank you for providing the universe of 2009 Legal and Marketing Expenses.  Due to statute of limitations time constraints, our office issued a disengagement memorandum and will not be auditing ATG's 2009 ICE submission.  However, we provided the Legal and Marketing information to Mr. Ron Souto, DCMA ACO and Mr. Antonio Fernandez, DCMA Team Lead.

(App. resp. to gov't opp'n and app. resp. to gov't cross mot. at 14; Bryan FY 2009 aff. ¶¶ 7-9; Bryan FY 2009 aff., ex. 3; gov't XSJM at 10)

On May 11, 2016, ACO Fernandez assumed responsibility for ATGI's contracts.  On or about May 12, 2016, in response to DCMA's April 21 request, ACO Fernandez received a package with documents supporting ATGI's claimed legal and marketing expenses (Fernandez aff. ¶ 8; Fernandez aff., ex. 6).  According to ACO Fernandez, prior to May 12, 2016, DCMA did not know or possess information from any source showing or indicating (or from which it could determine) that costs claimed in ATGI's FY 2009 ICP were unallowable (Fernandez aff. ¶¶ 9-10; Fernandez aff., ex. 7).  In sum, prior to May 12, 2016, DCMA did not possess information relating to ATGI's FY 2009 ICP from which it could have known that costs claimed in ATGI's ICP were unallowable.

After receipt of the information from ATGI on or about May 12, 2016, DCMA undertook to evaluate the propriety of the costs ATGI claimed in its FY 2009 ICP and determine the appropriate final indirect cost rates for ATGI's FY 2009 (Fernandez aff. ¶ 7; Fernandez aff., ex. 6).  Over eight months later, DCMA ACO Fernandez issued a final decision and demand for payment with respect to FY 2009 asserting ATGI included expressly unallowable costs in its 2009 final indirect cost rate (Fernandez aff. ¶¶ 10-11; Fernandez aff., exs. 7-8; app. mot. ¶ 1; gov't opp'n and cross mot. at 8).

7

<u>DECISION</u>

Both parties have moved for summary judgment in these appeals. The standards set forth in FED. R. CIV. P. 56 guide us in resolving motions for summary judgment. *Dongbuk R&U Engineering Co., Ltd.*, ASBCA No. 58300, 13 BCA ¶ 35,389 at 173,637; *J. W. Creech, Inc.*, ASBCA Nos. 45317, 45454, 94-1 BCA ¶ 26,459 at 131,661. We will grant a summary judgment motion only if there are no genuine issues as to any material fact, and the moving party is entitled to judgment as a matter of law. A party seeking summary judgment has the burden of demonstrating both elements. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987); *Comptech Corp.*, ASBCA No. 55526, 08-2 BCA ¶ 33,982 at 168,082. Further, we draw all reasonable inferences in favor of the party opposing the motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

The fact that both parties have moved for summary judgment does not mean that we must grant judgment as a matter of law for one side or the other. Each party's motion is evaluated by us on its own merits and properly denied if there is a dispute regarding a material fact. *Mingus Constructors*, 812 F.2d at 1391. A material fact is one which may make a difference in the outcome of the case, that is, the finding of the fact is relevant and necessary to the proceeding. A genuine dispute exists with respect to the fact if sufficient evidence is presented that a reasonable fact finder could decide the question in favor of the non-moving party. *E.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Opryland USA, Inc. v. Great American Music Show, Inc.*, 970 F.2d 847, 849-50 (Fed.Cir.1992).

ATGI asserts in its motion for summary judgment that the government's claims against it are barred by the CDA's six-year statute of limitations. According to ATGI, the claims against it accrued on the dates it submitted its ICP to DCAA for its 2007 and 2009 cost years, i.e., respectively, on May 31, 2008, and on or about June 15, 2010. ATGI contends the government does not dispute it issued ACO final decisions asserting claims against it for the cost years at issue more than six-years after the date ATGI submitted its ICP for the cost year and therefore it is entitled to judgment as a matter of law.

While the government does not dispute that the two ACO final decisions here asserting claims against ATGI were issued more than six-years after the date ATGI submitted its ICP for the respective cost year (gov't opp'n and cross mot. at 9), it asserts the decisions were issued within six years of the accrual dates for those claims. According to the government, the statute does not begin to run, unless and "until the claimant 'learns or reasonably should have learned' of his cause of action." The government contends its claims against ATGI accrued only when it obtained information showing the costs claimed by ATGI to be unallowable.

ATGI had four SBIR cost-plus-fixed fee (CPFF) contracts for research and development during the period at issue. Those contracts contained standard FAR clauses governing the payment of their costs by the government. As we explained in *Technology Systems*, *Inc.*, ASBCA No. 59577, 17-1 BCA ¶ 36,631 at 178,378, in a typical CPFF contract, subject to the standard FAR clauses included here,

> [t]he government compensates a contractor for two types of costs, direct and indirect. FAR 52.216-7(b). … Indirect costs are overhead costs that the company incurs during the time of contract performance that cannot be allocated to a single "cost objective." FAR 31.203(b). They are allocated to the contract on a *pro rata* basis, based upon the direct costs incurred during the base time period, typically the contractor's fiscal year (FY). FAR 31.203(b)-(g) . . . . Whether a cost claimed by the contractor is compensated by the government is dependent upon both whether the costs claimed are allowable under the contract (which is controlled by the FAR) and whether they are satisfactorily proved to have been incurred as shown in the records maintained by the contractor. FAR 52.216-7(b)(1)(ii)(F).

Indirect costs are billed and initially paid at estimated rates. FAR 52.216-7(e). Within six-months of the end of the contractor's fiscal year, it is required to submit to the CO and the CO's auditor (DCAA) a "final indirect cost rate proposal" or ICP based upon the actual indirect costs incurred during the fiscal year. FAR 52.216-7(d)(2)(i)-(iii). DCAA auditors typically select portions of the ICP for review and concentrate their review on them because it is not practical to closely audit the entire ICP. *Technology Systems*, *Inc.*, 17-1 BCA ¶ 36,631 at 178,378.

While ATGI submitted its ICP to DCAA for its 2007 and 2009 cost years, on May 31, 2008, and on or about June 15, 2010, respectively, neither ICP provided details for the categories of expenses set forth. In submitting its FY 2007 and 2009 ICPs, ATGI did not provide DCAA any financial, accounting or other records or documents with specific information regarding the marketing, legal fees or travel expenses included in the G&A Schedules (Bryan FY 2007 aff. ¶ 7; Fernandez aff. ¶¶ 9-10; Fernandez aff., ex. 6). For example, DCAA did not obtain data showing or from which it could have known of the unallowability of the patent costs identified as expressly unallowable in the FY 2007 COFD until after May 10, 2011. (Bryan FY 2007 aff. ¶¶ 5-11; Bryan FY 2007 aff., ex. 1 (Schedule B), ex. 2) As set forth above, on May 2, 2011, DCAA requested ATGI's "Trial Balance," an accounting report that itemizes credit and debit balances for each account in an entity's general ledger. ATGI supplied that data on May 10, 2011, which indicated it incurred patent legal costs. Until DCAA received this data, it possessed no information

that the G7A Schedule's line item for "Legal Fees" in the FY 2007 ICP included patent legal cost. (Bryan FY 2007 aff. ¶¶ 8-11; Bryan FY 2007 aff., ex. 2 at 313) DCAA did not obtain data showing or from which it could have known of the unallowability of the ATGI costs identified as expressly unallowable in the FY 2009 COFD until after May 11, 2016 (Fernandez aff. ¶ 8; Fernandez aff., ex. 6). In sum, prior to May 2011 and May 2016, respectively, DCMA did not possess information relating to ATGI's FY 2007 and 2009 ICPs from any source pursuant to which it could have known the disputed costs claimed in ATGI's ICPs were unallowable. (Bryan FY 2007 aff. ¶¶ 8-11; Bryan FY 2007 aff., ex. 2 at 313; Souto aff. ¶¶ 5-7; Souto aff., exs. 2-3)

ATGI disputes that DCMA did not possess information from which it should have known costs claimed in the ICPs were unallowable. ATGI asserts that DCAA knew at the time it accepted the ICPs what types of costs were incurred "based on all previous incurred cost proposals submitted, accepted and audited by DCAA for the full history of ATGI" (app. resp. to gov't reply at 1). In support of this assertion, ATGI cites only emails exchanged regarding DCAA's full audit of ATGI's 2006 cost year. While ATGI's assertions suggest that the 2007 and 2009 disputed ICP costs were also set forth in its 2006 claimed costs, such as costs depreciated or amortized over a term of years that included multiple cost years, that is not the case here. For example, the patent legal costs are discrete costs for legal services provided during FY 2007 and 2009 incurred and claimed during FY 2007 and 2009 (*see* Bryan FY 2007 aff., ex. 5A at 327, ex. 5B; R4, tab 8)

Under the CDA, "each claim by the Federal Government against a contractor relating to a contract shall be submitted within 6 years after the accrual of th[at] claim." 41 U.S.C. § 703(a)(4)(A). FAR 33.201 defines "accrual of a claim" as: "the date when all events that fix the alleged liability of either the Government or the contractor and permit assertion of the claim, were known or should have been known." *Sikorsky Aircraft Corp. v. United States*, 773 F.3d 1315, 1320 (Fed. Cir. 2014); *Flour Corp.*, ASBCA No. 57852, 14-1 BCA ¶ 35,472 at 173,929.

In evaluating when a claimed liability was fixed, we first examine the legal basis of the claim. *Gray Personnel, Inc.*, ASBCA No. 54652, 06-2 BCA ¶ 33,378 at 165,475. In these appeals, the legal basis for the government's claims are ATGI's inclusion of "expressly unallowable expenses" for reimbursement among costs set forth for ATGI's FY indirect costs.

Events fixing liability should be known when they occur unless they are either concealed or inherently unknowable at the time. *Alion Science & Technology Corp.*, ASBCA No. 58992, 15-1 BCA ¶ 36,168 at 176,489; *Raytheon Missile Sys.*, ASBCA No. 58011, 13 BCA ¶ 35,241 at 173,017. In *Holmes v. United States*, 657 F.3d 1303 (Fed. Cir. 2011), the United States Court of Appeals for the Federal Circuit applied a "knew or should have known" of the claim test interchangeably with a "concealed or

10

inherently unknowable" test for claim accrual stating that its alternate statement of the test includes an intrinsic reasonableness component. *Id.* at 1320; *accord Martinez v. United States*, 333 F.3d 129 (Fed. Cir. 2003) (*en banc*). Accordingly, claim accrual may be postponed where facts of a claim are not reasonably known by the claimant. *United States Commodities Export Co.*, 972 F.2d 1266, 1271-72 (Fed. Cir. 1992), *citing* 28 U.S.C. §§ 2415, 2416; *Alion Science*, 15-1 BCA ¶ 36,168 at 176,489-90. In assessing when a claim has accrued under the CDA, this Board has applied the "knew or should have known" accrual standard in various appeals. *Kellogg Brown & Root Services, Inc.*, 16-1 BCA ¶ 36,408 at 177,523; *Alion Science*, 15-1 BCA ¶ 36,168 at 176,489; *Raytheon Co.*, *Space & Airborne Systems*, ASBCA No. 57801 *et al.*, 13 BCA ¶ 35,319 at 173,376; *Raytheon Missile Systems*, 13 BCA ¶ 35,241 at 173,017. Prior decisions by a panel of this Board are deemed to be "binding precedent" in another ASBCA appeal unless the decision has been reversed or otherwise modified by the Board's Senior Deciding Group or by an appellate court reviewing our decision. *E.g., SWR, Inc.*, ASBCA No. 56708. 15-1 BCA ¶ 35,832 at 175,220; *PCA Health Plans of Texas, Inc.*, ASBCA No. 48711, 98-2 BCA ¶ 29,900 at 148,014, *aff'd*, 191F.3d 1353 (Fed. Cir. 1999).

Failure to meet the statute of limitations is an affirmative defense, for which the invoking party (ATGI) bears the burden of proof. *DRS Global Enterprise Solutions, Inc.*, ASBCA No. 61368, 18-1 BCA ¶ 37,131 at 180,696; *Bridgestone Firestone Research, Inc. v. Automobile Club de L'Ouest de la France*, 245 F.3d 1359, 1361 (Fed. Cir. 2001); *see* FED. R. CIV. P. 8(c). The statute of limitations thus cannot bar government claims asserted more than six years after government receipt of the ICPs here, absent proof by ATGI that the government knew or should have known at time of receipt of the ICPs facts sufficient or material to assertion of the government claims.

ATGI essentially asserts here that, at time of receipt of its ICPs, the government had access to its accounting system and could verify it was billing the government for the costs billed. ATGI therefore concludes the government "should have known" the material facts of the claims it asserts against ATGI. The government denies that it knew or should have known at time of its receipt of the ICPs information necessary for assertion of its ACO's claims. The government presents affidavits of its officials testifying the ICPs did not identify the specific cost transactions forming the basis for its claims. According to the government, while it knew ATGI was billing costs to the government, it did not know facts sufficient to conclude that some of those costs were expressly unallowable and created a cause of action.

We determined in *Sparton DeLeon Springs, LLC*, ASBCA No. 60416, 17-1 BCA ¶ 36,601, that a claim accrued when the contractor submitted its ICP to the government. Our determination in that appeal, however, resulted from admissions by the government in its brief regarding the type of information it received from the contractor at time of ICP submission, *i.e.,* undisputed facts (*id*. at 178,311; *DRS*

11

*Global Enterprise Solutions*, *Inc.*, ASBCA No. 61368, 18-1 BCA ¶ 37,131 at 180,698). In these appeals, we have no such admissions of knowledge of facts material to assertion of the government claims.

Our precedent demonstrates we must consider the unique facts of each appeal in determining when the government reasonably should have known of its claim *Sparton DeLeon Springs*, *LLC*, 17-1 BCA ¶ 36,601 at 178,311. The record in these appeals, as developed, lacks undisputed facts demonstrating the government knew or should have known of its claims at time of receipt of the ICPs. Viewing the record here in the light most favorable to the non-moving party (the government), as we must on a motion for summary judgment, we conclude that there is a genuine issue of material fact as to whether the ICPs contained sufficient data for the government to know of its claims asserted in these appeals. ATGI therefore has not met its burden of establishing the requisite factual predicate for invoking the statute of limitations as a bar to the government's claims.

## I. Government Cross-motion for Summary Judgment

In its cross-motion for summary judgment, the government asserts that "the Board should grant summary judgment in the Government's favor" because the government asserted its claims in final decisions issued shortly after those claims accrued. According to the government, the Board therefore "should grant summary judgment in the Government's favor and dismiss" the ASBCA appeals challenging ACO final decisions asserting government claims against ATGI. (Gov't opp'n and cross mot. at 24-27)

As discussed above, the ACO's final decisions here assert claims that ATGI sought recovery of expressly unallowable costs. It is well-established that the government has the burden of demonstrating that costs are unallowable. *Johnson Controls World Services*, *Inc.*, ASBCA Nos. 46674, 47296, 96-2 BCA ¶ 28,464 at 142,166. In these appeals, ATGI contends that facts relating to the disputed costs demonstrate that they are allowable expenses. The government has not presented any evidence regarding the disputed costs showing that they are expressly unallowable. For example, with respect to patent costs, the government appears to contend that all legal costs relating to patents are expressly unallowable. FAR 31.205-30(c), PATENT COSTS, however, provides simply: "Other than those for general counseling services, patent costs not required by the contract are unallowable." FAR 31.205-30(b) defines general counseling services related to patents as including "advice on patent laws, regulations, clauses, and employee agreements." Legal costs for general counseling services regarding patents and those required by the contract thus are allowable costs for reimbursement pursuant to the terms of the FAR. The government has not shown that the patent legal costs claimed are not legal costs for general counseling services.

The government also has not shown that the patent legal costs claimed are not required by the contracts at issue. SBIR contracts, such as the four here, generally contain a patent rights clause specifying the rights retained by the contractor and the rights granted the government in inventions developed under the SBIR contract. *E.g.*, FAR 27.303(b), 52.227-11. As found above, all four SBIR contracts here incorporate by reference FAR 52.227-11.

Generally, a contractor can retain title to patents granted for inventions conceived or first developed when performing work under a SBIR contract if the contractor (1) discloses the invention to the government within specified times; (2) elects in writing to retain title within specified times; and (3) files either a provisional or nonprovisional patent application within specified periods. *E.g.*, FAR 52.227-11(b)(1) & (2)(i), (c)(1) & (3). If a contractor fails to satisfy these requirements, the government can claim title to any patent awarded for the invention. FAR 52.227-11(d)(1)(i), (ii). If a contractor satisfies the foregoing requirements, it retains title to its patent, but must grant the government a nontransferable license to practice the invention. FAR 52.227-11(d)(2). In sum, the government may practice the contractor's invention on its own behalf or authorize others to practice it for the government's benefit throughout the world. *Id*.

The patent rights clause in ATGI's SBIR contracts expressly requires it to protect the government's interests. Specifically, the contractor is to have executed and delivered to the government all instruments necessary to establish or confirm the rights throughout the world that the government has in an SBIR funded invention for which ATGI possesses title, including notifying the CO of any decisions not to file a nonprovisional patent application, continue the prosecution of a patent application, pay maintenance fees, or defend in a reexamination or opposition proceeding upon the patent in any country before expiration of the response or filing period required by the relevant patent office. FAR 52.227-11(e)(1)(i), (3). In sum, the contractor obtaining a patent and granting a use license to the government ensures that the government or other potential competitor cannot use the invention for "commercial purposes" or to produce future technical procurement specifications that diminish the contractor's rights (and resultant business opportunities) while at the same time protecting the government by allowing the government the degree of access needed to evaluate the contractor's work and effectively utilize the results.

While we do not decide the issue today, it appears the requirements of FAR 52.227-11(c) place a contractual obligation upon a contactor to perform the effort described in FAR 31.205-30(a)(1), (a)(2), and (a)(3). If that is so, it appears that related patent legal costs would be allowable. *See* FAR 31.205-30(c). According to the *DoD Small Business Innovation Research Desk Reference for Contracting and Payment* at 83, *available at* https://fliphtml5.com/qaad/qnhx/basic/51-100, under FAR 52.227-11, a contractor is assured that it will at least receive partial compensation for its incurred patent costs.

Because the record before us primarily contains terse legal bills specifying money due for patent legal work without a detailed description of the legal work actually performed (Bryan FY 2007 aff., ex. 5A at 327, ex. 5B; R4, tab 8) and the government has not presented evidence regarding the disputed costs showing that they are expressly unallowable, we currently do not have a factual basis to grant summary judgment to the government that ATGI's patent legal costs are "expressly unallowable." Because the government has not developed the facts sufficiently here, the issue of allowability of the disputed costs cannot now be resolved by summary judgment. *See*, *e.g.*, *Kellogg Brown & Root Services*, *Inc.*, 16-1 BCA ¶ 36,408 at 177,528. Simply put, there are genuine issues of material fact that bar us from granting the government's cross-motion.

<u>CONCLUSION</u>

The appellant's motion for summary judgment is denied. The government's cross-motion for summary judgment is also denied.

Dated: November 18, 2020

TERRENCE S. HARTMAN
Administrative Judge
Armed Services Board
of Contract Appeals

I <u>concur</u>

I <u>concur</u>

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

14

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 59986, 61092, Appeals of Advanced Technologies Group, Inc., rendered in conformance with the Board's Charter.

Dated:  November 18, 2020

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals